UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS KLINE,

       Plaintiff,                              Hon. Wendell A. Miles

v.                                                    Case No. 4:06-CV-25

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 59 years of age at the time of the ALJ's decision. (Tr. 15). He successfully completed a college program in automotive mechanics and worked previously as a welder, grinder, mold setter, saw operator, and mechanic. (Tr. 15, 65-71, 230-32).

Plaintiff applied for benefits on February 23, 2004, alleging that he had been disabled since February 1, 2003, due to back and neck pain. (Tr. 46-48, 102, 211-13). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-45, 210-25). On May 24, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Michelle Ross. (Tr. 226-65). In a written decision dated November 4, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 14-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On April 24, 2003, Plaintiff reported to the White Pigeon Medical Care facility complaining of pain in his lower back, right shoulder, and right hip. (Tr. 151-52). Plaintiff rated his pain as 8 on a scale of 1-10. (Tr. 151). An examination revealed painful range of motion, but

was otherwise unremarkable. (Tr. 152). X-rays of Plaintiff's lumbosacral spine revealed "multilevel" degenerative changes. (Tr. 153). X-rays of Plaintiff's right shoulder revealed "mild" osteoarthritis at the right AC joint. X-rays of Plaintiff's right hip were "unremarkable." *Id.*

On October 31, 2003, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed cervical spondylosis with "extensive" disc and facet joint degenerative changes and "mild" spinal cord compression and foramen narrowing that "could" cause radiculopathy at C6-7 and C7-T1. (Tr. 142).

On November 6, 2003, Plaintiff participated in a pulmonary function examination, the results of which revealed "mild" airway obstruction and "mild" chest restriction. (Tr. 137).

A November 17, 2003, examination revealed painful range of spinal motion, but negative straight leg raising. (Tr. 134-35). Plaintiff also exhibited full range of motion in his right upper extremity. *Id.*

On November 20, 2003, Plaintiff participated in an ultrasound examination of his aorta, the results of which were "normal." (Tr. 132). The results of a cardiac stress test, conducted the following day, were "normal" with a "low probability of coronary artery disease." (Tr. 133).

X-rays of Plaintiff's lumbosacral spine, taken on January 7, 2004, revealed "no significant change" from previous examinations. (Tr. 129). On January 12, 2004, Plaintiff participated in an MRI examination of lumbar spine, the results of which revealed multilevel degenerative changes with "small" disc protrusions. (Tr. 124).

On March 18, 2004, Plaintiff completed a report regarding his activities. (Tr. 74-80). Plaintiff reported that he sweeps, performs yard work, washes dishes, shops, washes laundry, cooks, and drives. (Tr. 74-76). Plaintiff also reported that he enjoys watching television, hunting, and

4

repairing cars. (Tr. 77). Plaintiff reported, however, that when he repairs cars he must take breaks every twenty minutes. *Id.*

On May 7, 2004, Plaintiff was examined by Dr. R. Scott Lazzara. (Tr. 172-76). Plaintiff reported that he was experiencing back and neck pain, as well as numbness in his right arm. (Tr. 172). Plaintiff reported that he is able to drive and perform household chores. He also reported that he can sit for 30 minutes, stand for 60 minutes, walk one mile, and "occasionally" lift "about" 50 pounds. *Id.* Plaintiff's grip strength was "intact" and his dexterity "unimpaired." (Tr. 173). He exhibited "no difficulty" getting on/off the examination table, squatting, or heel/toe walking. *Id.* Plaintiff exhibited normal range of motion in his spine and extremities and exhibited "normal" muscle strength. (Tr. 173-75). Romberg testing[1] was negative and Plaintiff walked with a "normal" gait. *Id.* The doctor did observe "some facet arthropathy" in Plaintiff's lower lumbar spine, but there was no evidence of radicular symptoms or nerve root irritation. (Tr. 176). Dr. Lazzara concluded that Plaintiff's "limitations only appear to be extreme heavy lifting." *Id.*

On April 25, 2005, Plaintiff completed a report regarding his activities. (Tr. 110-15). Plaintiff reported that on a typical day he washes dishes and laundry. (Tr. 110). He also reported that he drives, cooks, shops, reads, attends sporting events, visits relatives, and cares for his personal needs. (Tr. 112-13). Plaintiff further reported that he enjoys fishing, hunting, and constructing model cars and trucks. (Tr. 110).

---

[1] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on June, 25, 2007). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

5

## ANALYSIS OF THE ALJ'S DECISION

A. **Applicable Standards**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) chronic obstructive pulmonary disease; (2) arthritis; (3) hypertension; (4) history of myocardial infarction; and (5) history of surgically corrected bilateral cataracts. (Tr. 17). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating his entitlement to benefits, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform medium work subject to the following limitations: (1) he can occasionally lift 50 pounds and frequently lift 25 pounds; (2) he can stand or walk for about six hours during an 8-hour workday; (3) he can sit for about six hours during an 8-hour workday; (4) he can only occasionally climb, stoop, or crouch; (5) he can frequently balance, kneel, and crawl; (6)

he can lift at waist and shoulder height without restriction, but can only occasionally lift overhead; and (7) he must avoid concentrated exposure to fumes, dust, gases, and poor ventilation. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michelle Ross.

The vocational expert testified that there existed approximately 37,800 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 260-61). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). The vocational expert also testified that if Plaintiff were further limited in that he could lift no more than 25 pounds

maximum and stand/sit for only 3-4 hours each during an 8-hour workday, there existed 47,000 jobs which Plaintiff could perform. (Tr. 259-60).

### a. The ALJ Properly Assessed the Medical Evidence

On September 8, 2004, Physician's Assistant Lynn Egyed completed a report regarding Plaintiff's limitations. (Tr. 200-02). Egyed reported that during an 8-hour workday Plaintiff can sit and stand for only one hour. (Tr. 201). Egyed further reported that Plaintiff can lift only 5-10 pounds. *Id.* Plaintiff asserts that because Ms. Egyed was his treating physician, the ALJ was required to accord controlling weight to her opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

As the ALJ correctly observed, Ms. Egyed is a physician's assistant not a physician. (Tr. 202). As such, she does not qualify as a treating source whose opinion is entitled to deference. *See* 20 C.F.R. §§ 404.1513, 404.1527. Nonetheless, the ALJ considered Ms. Egyed's opinion and properly accorded it "reduced weight." (Tr. 18). As the ALJ recognized, Ms. Egyed's opinions are supported by neither the objective medical evidence nor Plaintiff's reported activities. As the ALJ further recognized, Ms. Egyed's opinions "are even more limiting than [Plaintiff's] subjective testimony at the hearing." *Id.* In sum, substantial evidence supports the ALJ's decision to accord less than controlling weight to Ms. Egyed's opinion.

b.   The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 37,800 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: July 5, 2007                                          /s/ Ellen S. Carmody
                                                            ELLEN S. CARMODY
                                                            United States Magistrate Judge